ROSALIE CARTY, Respondent, *v.* ACKER, MERRALL & CONDIT COMPANY, Appellant.

First Department, November 28, 1924.

**Motor vehicles — action to recover for injuries suffered when plaintiff was struck by defendant's automobile — defendant's chauffeur, at close of day's work, instead of going directly to garage carried fellow-employee home — chauffeur went one mile beyond garage — accident happened while returning — chauffeur was instructed not to take any one in automobile outside of employees — chauffeur had no authority to take employees home — chauffeur was outside employment at time of accident and defendant is not liable.**

The plaintiff, who was injured when she was struck by defendant's automobile, cannot recover damages from the defendant, since it appears that the defendant's chauffeur who drove the automobile instead of going directly to the garage at the close of his day's work, took a fellow-employee home and in doing so went about a mile beyond the garage; that on his way back to the garage

the accident happened; that the chauffeur was instructed not to carry any one in the automobile outside of employees; and that he had no authority from the defendant to take employees to their homes. At the time of the accident the chauffeur had abandoned his employer's business for a private enterprise of his own and, therefore, the defendant is not liable.

APPEAL by the defendant, Acker, Merrall & Condit Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of January, 1924, upon the verdict of a jury for $3,500, and also from an order entered in said clerk's office on the 18th day of February, 1924, denying the defendant's motion for a new trial made upon the minutes.

*Pettigrew, Glenney & Bovard* [*B. L. Pettigrew* of counsel; *W. L. Glenney* with him on the brief], for the appellant.

*Theron Davis,* for the respondent.

DOWLING, J.:

This action is brought to recover damages sustained by plaintiff by reason of the negligent operation of defendant's automobile delivery truck.

The accident happened at One Hundred and Forty-fifth street and Lenox avenue in the city of New York, at about seven-ten P. M. on November 18, 1920. The only question involved in this appeal is whether the automobile was being used in defendant's business at the time of the accident, or whether the chauffeur had abandoned his employer's business and was engaged about his own affairs at that time.

The following facts appear without dispute: At about a quarter of seven o'clock on the evening in question the chauffeur having finished his work for the day left defendant's store at One Hundred and Twenty-fifth street and Seventh avenue with his truck empty. His destination then should have been the garage at One Hundred and Twenty-fifth street and First avenue. Instead of going there directly, however, as his duty required, he took on board the truck one of his fellow-employees in defendant's store. He took such employee to his home at One Hundred and Forty-fifth street and Amsterdam avenue, left him there, went up to One Hundred and Forty-sixth street and Amsterdam avenue, turned the corner, came down Amsterdam avenue to One Hundred and Forty-fifth street, proceeded east on One Hundred and Forty-fifth street to Lenox avenue, and was turning down Lenox avenue when his truck struck the plaintiff. At that time he was on his way to the garage.

It thus appears that instead of following the line of his duty and traveling along One Hundred and Twenty-fifth street direct from

Seventh avenue to First avenue, he traveled a mile to the north, away from his proper destination, about an errand of his own, and was on his way back when the accident happened.

This purely gratuitous act of the chauffeur was not performed on defendant's behalf, nor about its business, nor pursuant to any authorization given to him by it. His explanation for allowing the fellow-employee to ride with him was as follows: " Q. This was the first time that you ever let anyone in your car? A. Yes, sir. Q. Now, how did you come to let him in your car? A. It was such a nasty night out, very windy, very windy and dark, and so cold out, and I jumped on the car and got it started, about to go, and he came up, he said: ' What do you say? Ride me out.' I said: 'All right, jump in.' Q. He asked you to ride? A. Yes. Q. You did not ask him? A. No, sir. Q. Now, do you mean to tell the jury if you had not gone uptown you would have gone right home to the garage? A. Yes. Q. From Seventh avenue and One Hundred and Twenty-fifth street over to First avenue is about how far? A. Oh, I guess it is about a mile."

The chauffeur originally testified on cross-examination: " Q. Did any one connected with Acker, Merrall & Condit give you any instructions about not carrying anybody? A. Mr. Washburn, the manager, told me not to have any rider outside of the firm's employees. Q. But he did not tell you not to carry any of the firm's employees, did he? A. He didn't say nothing about that. Q. But he told you not to carry any one in your car outside of the employees? A. Outside of the employees."

Recalled for further cross-examination he testified: "Q. Mr. Schaefer, you know Mr. Washburn connected with Acker, Merrall & Condit Company? A. I did, at the time I was in the store. Q. You knew him when you left? A. Yes. Q. He is the one who gave you instructions regarding your car? A. No, sir. Q. Who was Mr. Washburn? A. He was the manager. Q. He is the one who told you not to let anyone in your car except employees? A. No, sir, he did not tell me, the shipping clerk. Q. The shipping clerk told you that? A. Yes, sir. Q. And what did Mr. Washburn say about your car? A. Nothing at all. Q. Never gave you any instructions regarding your car? A. No. The shipping clerk had charge of me. Q. The shipping clerk told you not to allow anyone in your car except employees? A. Yes. Q. Did the shipping clerk ever say anything to you about taking any employees home or letting them ride in the car? A. No. Q. Did anyone in the Acker, Merrall & Condit Company ever forbid you to take any employees home? A. No, sir. By Mr. Pettigrew: Q. Did you ever take any employees home before this man? A. No, sir."

First Department, November, 1924.　　[Vol. 210

The chauffeur was no longer in defendant's employ at the time of the trial.

The employee who was the passenger on the delivery truck (now a police officer) corroborated the testimony of the chauffeur that the truck was empty when he got aboard it. He was asked: " Did you have any authority from your employer to be driven home in that automobile? " and he answered, " No."

It will thus be seen that there is absolutely no evidence of any authority given to the chauffeur to depart from his assigned route to the garage from the store with his empty truck, for the purpose of taking a friend a mile to the north. Whatever argument might be made as to his authority to take fellow-employees on his truck to drop them off as he traveled his route from the store to the garage along One Hundred and Twenty-fifth street from Seventh avenue to First avenue, certainly there is no evidence here which can be possibly held to authorize his departure from his route to take such employees to their homes far away from his path of duty. The taking aboard his truck and conveying to his home of another employee, under the circumstances shown here, must be held to constitute an abandonment of the employer's business and an engagement on a private and unauthorized undertaking of his own. For the results following such an undertaking the defendant is not liable. (See *O'Brien* v. *Stern Bros.*, 223 N. Y. 290; *Der Ohannessian* v. *Elliott*, 233 id. 326; *Fiocco* v. *Carver*, 234 id. 219; *Campbell* v. *Warner*, Id. 645.)*

The judgment and order appealed from should, therefore, be reversed, with costs to appellant, and the complaint dismissed, with costs.

CLARKE, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.

---

* See Highway Law, § 282-e, as added by Laws of 1924, chap. 534, in effect July 1, 1924.— [REP.